The next case for argument is 24-1663, Osenbach v. HHS. Ms. Chin-Chaplin, when you're ready. Thank you. Your Honors, may it please the Court. This case involves an injury that occurred under the National Vaccine Compensation Act. And this act was enacted by Congress to award damages that can occur from vaccines. In this particular case, this child had a pre-existing seizure disorder at four months, which was recognized had been caused by a vaccine the prior day. He continued to have additional seizures, too, but was considered developmentally normal. Approximately in April of 2013, he received a fourth vaccination. Within 24 hours, he developed a 30-minute seizure disorder. And when that didn't abate with drugs that the mom gave, the EMTs also administered an anti-seizure medication. And the child then proceeded to arrest and suffered eight minutes of hypoxia, or low oxygenation. The special master denied compensation. He indicated that he would have found that the child's pre-existing disorder had worsened after the seizure administration, which would be Loving's Prong 1 through 3, which requires an evaluation of the child's condition before and after the vaccine, and to determine whether or not the condition was worse after the vaccine. He acknowledged that if he had engaged in this analysis, he would have found for petitioners for Prongs 1 through 3. He found that Prongs 4 through 6, which is essentially the Alvin Prongs utilized to evaluate vaccine injuries, was insufficient. Specifically, he indicated that the petitioner's theory was deficient, because it assumes that the one-time effect of stimulating cytokines will, in turn, contribute to a pathogenic process. He acknowledged that the petitioner's theory was plausible. What he failed to do, however, was take into account the testimony by petitioner's expert of the fact that not only was it just cytokine activation from the vaccination, but also the hypoxia, or the lack of oxygenation, that contributed to this child's subsequent deterioration. Do you agree that you need to win on Prongs 4 and 5 in order to prevail on the appeal? Prong 4 requires petitioners to provide a theory as to how vaccination can cause this harm. Prong 5 is a logical sequence of cause and effect on how this vaccination caused the harm. Historically, the theories have been provided by expert testimony. And Prong 5, they've looked to treating physicians or a substitute. So one question, though, and I appreciate your explanation of the Prongs, but do you agree that you need to win on those Prongs in order to win on the appeal? I'm sorry, sorry. I'm sorry, Jan, I didn't hear. Do you agree that you would need to win on those Prongs we were just discussing, you were giving me a little summary explanation of them, in order to prevail on this appeal? Yes, I would. However, what the petitioner is claiming, asserting, is that the special master did not consider all the evidence that was placed into the record on Prong 4 and Prong 5. And not only that, he required direct evidence. We're permitted to prove our cases by circumstantial evidence. And when he required the direct evidence, what he specifically was looking for was an MRI which reflected brain damage. Now, in this child's particular case, after sustaining the prolonged seizure, he did have an MRI which was performed, which was negative. And the petitioner's expert explained that in 30% of cases, MRIs are negative. And he provided a reasoning for that in an article that he submitted. And in that article, it indicated that if the damage is anatomical, it will be reflected on the MRI. However, if the damage is functional, it will not be reflected. And the special master failed to credit that information as well. And he failed to credit the submission of this article. Now, the other thing under Prong 4, which petitioners assert was erroneous, is that in denying compensation, the special master required petitioners to prove that the vaccine wholly altered the course of his genetic mutation. Now, this genetic mutation was a variant of uncertain significance and was thought that it may affect splicing. Variants of uncertain significance indicate that no one else in the world has this mutation. So if no one else in the world has this mutation, it is impossible for a petitioner to predict the outcome of what this mutation will produce. What is known is that in SCN1 mutations, there is a spectrum of disorder. The person can be totally asymptomatic to being totally disabled. And in the absence of any functional studies, which were not performed here, it is unknown whether this mutation is pathogenic or not. Special master acknowledged the findings here, but yet ruled that because we have failed to show that this vaccine wholly altered this child's underlying condition, that he was not entitled to compensation. Petitioners assert that is not their burden of proof. What is required is that they show a change in condition from the child's baseline after administration of the vaccination. If the special master's conclusion was accepted, it would indicate that in any child who had a genetic disorder, that unless you rule out the genetic disorder, they cannot be awarded compensation. And that's not what Congress intended when it passed this act. It was intended to be generous and fair. And in close cases, they were to rule in favor of petitioner. Here, where the child has a variant of uncertain significance, where it is unknown what the future course may be, no one else has this mutation, it would be impossible for a petition to provide any evidence about what could be expected from this condition. Is your primary argument an argument that the special master got the weight of the evidence wrong? He imposed a higher burden of proof than that required by the act. He required information that, in this court previously indicated, was to provide a theory. Can you point me to a specific appendix page where you're saying the special master did this? In terms of, you said there was a higher burden required. Can you point me to somewhere in the record where I can see the alleged error made by the special master that you're contending? The alleged error, Your Honor, is in the criteria that he imposed on petitioners to establish the fourth prong of loving, which is a theory. And the theory does not require petitioners to exclude a pre-existing disorder. Once they have established that entitlement, then the burden then shifts to the respondent to show that the genetic disorder would have been the sole cause, that it was more likely than not that the genetic disorder caused the harm. In this particular case, he imposed that burden on petitioners. And that is erroneous. In addition, petitioners allege that the special master imposed a requirement on prong five, which is for petitioners to prove a logical sequence of cause and effect. And he indicated that we had not proven prong five, because there was no contemporaneous records which attributed the deterioration to vaccines, which is an indication that he sought direct evidence again. We are permitted to prove these cases by circumstantial evidence. And what this circumstantial evidence indicated was that after suffering the prolonged seizure of greater than 30 minutes with hypoxia of approximately eight minutes, the child was subsequently intubated for respiratory distress and respiratory support. He was placed on a ventilator. And after he was stabilized, several days later, was sent home. He was evaluated by his neurologist at Duke, who found that he heard no vocalizations. Several weeks later, he was seen by his family practitioner, his pediatrician, who indicated that the parents were concerned about the child's speech and his toe walking. And approximately a month later, he was evaluated by his pediatric neurologist, who indicated that the child needed developmental services. Now, prior to the April 2013 administration of vaccines, despite having a seizure disorder, he was considered developmentally normal. Only after he suffered the prolonged seizure with the hypoxia were these developmental concerns apparent. And while not direct evidence, it is circumstantial evidence that injury did occur here. So that would suffice establishment of prong five, which is the logical sequence of cause and effect. OK, Counsel, you're into your rebuttal time. Do you want to save it? Pardon me? You're into your rebuttal time. Would you like to save the remainder of it? Yes, I would. OK, let's hear from the government. OK, thank you. Good morning, and may it please the court. My name is Felicia Langell for the Secretary of HHS. Petitioners argue that this case is so distinguishable from other comparable cases that, unlike all of those prior cases of SCN1A gene mutation and epilepsy, that this case is deserving of compensation. It is not. The Chief Special Master reviewed the evidence in its entirety, and his findings were supported by plausible inferences and a rational basis. The Chief Special Master committed no legal error in his analysis of the evidence. The Court of Federal Claims affirmed the Chief Special Master's denial of entitlement and properly refused to reweigh the evidence. Was the Special Master correct in saying that the test is that something has to wholly alter the course of the disease? Well, Your Honor, what petitioners, well, OK, so let's take a step back. So what the Chief Special Master, OK. Can you just remind us, this is just, I know we're talking about it in terms of loving now instead of Alton, but this step is Alton-1, right? Yes, loving prompt for, yes, Your Honor. What's the established standard to show Alton-1 or loving for? There's a term, there's a phrase. What is it? You mean the preponderant evidence standard? The preponderant evidence of what? Oh, that the vaccine can cause, in this case, significant aggravation of the child's epilepsy. This is where they have to have a plausible medical theory, the preponderant evidence of a plausible medical theory that it caused it? Preponderant evidence of a medical theory that caused it. Right. Right. So, Your Honor, let me, if I may, go back to. Yeah, go back to the question and explain how the standard that appears to be articulated here, that it wholly alters or it's but-for, matches up with the standard you just articulated. Because it sounds like a much higher standard. So in this case, it's important to explain that what this child has is, and the chief social master, after reviewing all the evidence, determined the preponderant evidence shows that this child suffers from a condition known as Dervais syndrome. Dervais syndrome is a genetic epilepsy that causes, that is refractory to treatment and begins in the first year of life. Now, in addition to that, this child has a genetic defect to his SCN1A gene. And SCN1A genes are known to be causal of Dervais syndrome. So what petitioners take exception to, and keeping in mind that this is a chronic condition, this child was born with this condition, and over the course of time, this condition progresses and goes through a natural course of change as the child develops. What petitioners are taking exception to is that the chief special master looked at that, looked at the natural course progression of this disorder. And what they're saying is that in Sharp, the case that this court decided in Sharp, that petitioners are not. I understand all of this, but isn't the problem that I have a hard time understanding if the special master understood, and he probably does because he's been around for a long time, but we have to base our decision on what he wrote. And he wrote, this does not mean that the impact of a vaccine on a person with Dervais, you say it's Dervais, more likely than not wholly alters the course of their disease. That's not, if that's the standard he's applying, that's not the right standard, is it? The standard is, more likely than not, aggravates the course of their disease, because this is an aggravation case. It doesn't have to show wholly alteration, it has to show aggravation. And those two things seem to be different. Well, what this court said in Sharp, it reaffirmed its decision in Stone that the special master may consider all evidence in the record, including evidence of other possible sources of injury. In Sharp, what the special master may not do, and I'm quoting here from Sharp at 1082, special master may not place the burden on the petitioner to prove that her significantly aggravated condition was not caused by her gene mutation. That's not what the chief special master did. The special master, according to Sharp, may consider evidence of other possible sources of injury offered by a respondent to rebut petitioner's prima facie case. Here- So what's your best case support for saying that it was fine for the special master to use the phraseology that Judge Hughes just walked you through with respect to the wholly altered? Well, wholly altered, Your Honor, wholly altered is essentially a restatement of what petitioner is arguing here. Petitioners are arguing. Alter means change. And wholly means, if you can apply that to significant change. So what they're arguing is that those 12-month vaccinations significantly aggravated- The problem is, it's a little more than significant. It means it completely alters the course. And that's not their burden to show that it completely alters. That sounds to me like it's putting a burden on them to show that the genetic condition coupled by the vaccination is the answer to why this condition is occurring. And that's not our precedent, right? You agree with that. I think you just said that. They have to provide a plausible medical theory by preponderance of the evidence. Not certain, 100% true, plausible. And I have a hard time squaring this language with that standard of proof for them. So, Your Honor, if I'm understanding, what you're saying is, is this a matter of degree? That wholly is worse than significant? And that the Chief Special Master- I mean, it is. It's the English language. I don't mean to be flippant, but it means something different. And maybe this is just an artful opinion writing by the Special Master. But the problem we have is, we can't get in his head and understand what he thought he was doing. We have to read his opinion, and his opinion looks like it's articulating a higher standard. Well, Respondent's interpretation of what the Chief Special Master is saying is that, in fact, Respondent provided that evidence of that natural course of how Dravet evolves over time. The burden was placed on Respondent, in fact, not on Petitioner. If you recall, also, after the Chief Special Master found that Petitioners had not met their prima facie case of proving causation, either general or specific, levings prong four or five- Do you want to talk about five? Because my understanding is, even if we think that there's legal error on prong four, you still win if there's substantial evidence on prong five. Exactly. So, yes, Your Honor. So- And can you specifically respond to your opposing counsel's discussion about her view that the Special Master required direct evidence and just disregarded the circumstantial evidence of the factual chain of events here? Right, yes, Your Honor. So, Petitioner's medical expert posited a theory of causation under that prong four, and that theory of causation ends with brain hypoxia. That's Petitioner's theory that this child suffered brain damage due to hypoxia. Under prong five, Petitioners have to show preponderant evidence to support that theory. They provided no evidence to support that theory. This is based on Jashee's Special Master's review of the record. First thing is regarding hypoxia, and I realize that Petitioner's counsel talks about direct proof. I will discuss that, but then we'll go to the circumstantial evidence. But as far as direct proof goes, when this child was admitted into the hospital soon after those 12-month vaccinations, a number of tests were run. One is the MRI. The MRI was completely normal. If there were evidence of hypoxia, it would show up on the MRI. While Petitioner's expert provided medical literature that said that may not always be the case, again, the standard is preponderant evidence, and here we have an MRI that is negative. Additionally, there was blood work done. There was no evidence of neuroinflammation on the blood work or autoimmune disease. So, as far as all that workup within a couple of days of this child's seizures, they were all negative. So now what Petitioner's are pointing to is circumstantial evidence. Soon after this 12-month incident, the child began to demonstrate evidence of developmental delay. And what they're arguing is, well, that is the circumstantial proof of brain hypoxia, of brain injury. What the Chief Special Master explained after having reviewed all of the evidence in this case, and really as part of the factor unrelated analysis that he did, is that the way the Dravet syndrome proceeds over time, it starts before a child's first year. Starts usually at age four to six months is when the seizures begin. They get progressively worse over time, and by the time a child reaches age one, that's when you start to see evidence of developmental delay. And the seizures are increasing in frequency and severity, and you see the developmental delay, until the child reaches about age five, which is like a stabilization period. So that's what he was pointing to. And his finding, based on the evidence, based on what we know about Dravet syndrome, is it makes sense that this child would have developmental difficulties around the age of 12 months, which is when we start to see that. He was not- Are you contending, then, that the Special Master did consider the circumstantial evidence, but just didn't find that it led to the result that the appellate wanted here? Is that what you're kind of contending at a higher level? So, essentially, Your Honor, the Special Master says, on page 42 of his decision, that he considered that circumstantial evidence, but he was not persuaded by it. He gave it lesser weight, because, again, it is consistent with the natural course of Dravet syndrome. So that addresses specific causation, unless you have any questions about that. Have I? In addition to, and I'll just basically close, unless you have any more questions, but in addition to not finding causation, while the Special Master found that petitioners had not met their prima facie case, he also did, he didn't have to, but he did a factor unrelated analysis, and determined that respondent had met his burden there. Thank you. Okay, thank you. Just a few points, Your Honor. First of all, this child was not diagnosed with Dravet syndrome prior to the onset of status epilepticus and hypoxia. He was considered developmentally normal. His physicians actually never diagnosed him with Dravet syndrome. His physician at Duke actually gave him medications that were contraindicated if he had Dravet syndrome. Now, it's only after the fact that respondent's expert indicates that he suffers from Dravet syndrome, based on the clinical course that evolved after he had suffered his prolonged seizure, after the immunization, and after the hypoxia. The other instance is this variant of uncertain significance. Nobody else in the world has it, and the articles that were submitted by respondent's expert indicates that variants of uncertain significance should not be utilized in clinical practice. If it shouldn't be utilized in clinical practice, it shouldn't be utilized in a court of law. And secondly, because it's a splice site, it may affect splicing, as it states in the report. The article submitted by respondent indicates that splice site mutations are predicted to have no effect. The special master did not comment on this evidence in the least bit, and failed to address it. And if he had, petitioners assert that he would not have found that the chap has suffered Dravet syndrome, and also that it more probably than not occurred because of his SCN1A variant. Again, SCN1A patients encompass a wide spectrum of disorders from totally asymptomatic to Dravet, which is a very severe seizure disorder. In this case, with a variant being non-pathogenic, it is impossible to make any determination as to the effect of this variant. But if the literature submitted by respondent is to have any effect whatsoever, it's predicted to have no effect. Thank you. Thank you. Case is submitted.